UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTONIA DENISE HICKS,

                Petitioner,

    v.

UNITED STATES OF AMERICA

                Respondent.

CASE NO. C05-1629 JCC
(CR02-375C)

REPORT AND RECOMMENDATION

## I.   INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Antonia Denise Hicks is a federal prisoner currently incarcerated at the United States Penitentiary in Bryan, Texas.  She filed this motion pursuant to 28 U.S.C. § 2255 challenging her sentence on grounds of Sixth Amendment Confrontation Clause violations, improper sentence length, ineffective assistance of counsel, and cumulative error. The Government filed a response and Petitioner filed a reply.  After carefully considering the memoranda of the parties and the balance of the record, the undersigned concludes that Petitioner's § 2255 motion should be GRANTED on the single ground of sentencing error[1] pursuant to 18 USC § 3584 and her sentence VACATED for resentencing.

---

[1] The Specific ground is set fourth in Section B of this Report and Recommendation, page 9.

## II.  BACKGROUND

On October 31, 2002, a grand jury returned an Indictment alleging that Petitioner committed eight (8) counts of wire fraud in violation of 18 U.S.C. § 1343.  (Cr Dkt. #1 – Indictment)[2].  On July 17, 2003, a jury found Petitioner guilty on all eight counts of wire fraud.  (Cr Dkt. #62 – Conclusion of Trial).  The jury also returned a Special Verdict Form regarding forfeiture of property.  (Cr Dkt. #69 – Special Verdict Form; Dkt. #62).  On October 17, 2003, Petitioner was sentenced to sixty-three (63) months in prison, followed by five years of supervised release.  (Cr Dkt. #79 – Judgment).  That same day, Petitioner filed a Notice of Appeal.  (Cr Dkt. #81 – Notice of Appeal).

On June 28, 2004, the Ninth Circuit Court of Appeals affirmed the District Court's judgment.  *See United States v. Hicks,* 103 Fed. Appx. 208 (9th Cir. 2004).  On September 21, 2005, Petitioner timely filed this § 2255 motion raising the following grounds for relief:

1.  The Government presented evidence and trial testimony that violated Petitioner's Sixth Amendment confrontation rights.

2.  Petitioner's sixty-three (63) month sentence violated the Ex Post Facto Clause because it exceeded the maximum sentence length permitted by the 2001 version of 18 U.S.C. § 1343.

3.  Petitioner's Sixth Amendment Right to effective assistance of counsel was denied at trial, sentencing, and appeal based on, *inter alia*, failure to investigate facts and law.

4.  Cumulative error denied Petitioner a fair trial.

---

[2] The following analysis contains citations to both Petitioner's criminal case and her § 2255 petition.  As a result, all citations beginning with "Cr" refer to documents from Petitioner's criminal case; all citations beginning with HP refer to documents from Petitioner's § 2255 petition.

*See* HP Dkt. #1 – Petitioner's § 2255 Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody).

### III. DISCUSSION

A.  Confrontation Clause Violations

Petitioner argues her Sixth Amendment confrontation rights were violated because she was unable to properly cross-examine several individuals who provided admissible testimony at trial.  (HP Dkt. #1 at 8).  In conducting an inquiry for a Confrontation Clause violation, the court must first consider whether the challenged evidence was "testimonial" in nature.  *See Crawford v. Washington,* 541 U.S. 36, 52 (2004); *United States v. Weiland,* 420 F.3d 1062, 1076 (9th Cir. 2005).  If the evidence was testimonial, the government must provide the defendant with confrontation and the opportunity for cross-examination.  *Id.*  Although the court in *Crawford* did not provide a detailed definition of "testimonial," it held that it encompassed, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and police interrogations."  *United States v. Wilmore,* 381 F.3d 868, 871-72 (9th Cir. 2004).

In addition, the Ninth Circuit recently held that the *Crawford* test was retroactive to cases on collateral review.  *See Bockting v. Bayer,* 399 F.2d 1010 (9th Cir. 2005).  Accordingly, Petitioner's alleged confrontation violations are not procedurally barred and will be considered in turn.

1.  Nathanial T. Brown

Petitioner argues her confrontation rights were violated because she never cross-examined Vulcan's Chief Financial Officer Nathanial T. Brown ("Mr. Brown") about his Affidavit of Forgery, which permitted police to obtain a search warrant for her home.  (HP

Dkt. #1 at 8-9).  The Government responds that Petitioner has no right to confront a witness the police relied upon to obtain probable cause.  (HP Dkt. #7 at 9 – Government's Answer and Brief in Opposition to Petitioner's Section 2255 Motion).  This Court agrees with Respondent.

A defendant has no right to confront either witnesses who provide no evidence at trial or witnesses upon whom police rely in obtaining probable cause.  *Pavlik v. United States,* 951 F.2d 220, 224 (9th Cir. 1991);  *United States v. Brown,* 322 F. Supp. 2d 101, 105 n.4 (D. Mass. 2004).  In addition, the government is not required to call all of the witnesses to a crime because confrontation rights are satisfied by the [petitioner's] opportunity to subpoena and call witnesses in her own case in chief.  *Pavlik,* 951 F.2d at 224.

Here, Petitioner's inability to cross-examine Mr. Brown did not violate her confrontation rights because the Government neither examined Mr. Brown nor used his affidavit as an exhibit at trial.  (HP Dkt. #7 at 9).  Mr. Brown's affidavit was used solely to provide police probable cause to obtain a search warrant for Petitioner's home.  *Id.*  Petitioner argues that, according to *United States v. Dorsey,* 418 F.3d 1038, 1044 (9th Cir. 2005), there is a right to confront a witness police reply upon to obtain probable cause.  (HP Dkt. #14 at 5, fn. 2 – Petitioner's Reply to the Government's Answer and Brief in Opposition to Petitioner's Motion Under 28 U.S.C. § 2255).  Petitioner's reliance upon *Dorsey* is misplaced, however, because the Ninth Circuit held that the defendant's confrontation rights were never violated. (*See* HP Dkt. #14 at 5; *Dorsey,* 418 F.3d at 1044).  Accordingly, Petitioner's confrontation rights were not violated.

2. <u>Colleen Dunbar Romero</u>

Petitioner argues her confrontation rights were violated because the court prevented her from properly cross-examining her former attorney Colleen Dunbar Romero ("Ms. Romero"). (HP Dkt. #1 at 9). The Government responds that Petitioner properly cross-examined Ms. Romero, strategically avoiding questions that would have allowed the Government's attorney to inquire into attorney-client privilege on re-direct. (HP Dkt. #7 at 10).

While a district court has discretion to limit cross-examination, it may not impose restrictions that "limit relevant testimony and prejudice the defendant." *United States v. Wilmore,* 381 F.3d 868, 872 (9th Cir. 2004). In other words, a court cannot prohibit a defendant from probing a witness's credibility or motives altogether. *Id.* (citations omitted).

Petitioner's confrontation rights were not violated because she adequately cross-examined Ms. Romero. Although Petitioner cites two Ninth Circuit opinions stating that a court cannot prejudice a defendant's ability to cross-examine witnesses (HP Dkt. #14 at 8), these opinions are inapplicable here because District Court Judge John C. Coughenour never limited Petitioner's ability to cross-examine Ms. Romero. During cross-examination of Ms. Romero, Judge Coughenour simply called a sidebar to warn Petitioner's counsel that he was opening the door for the Government's attorney to inquire into attorney-client privilege on re-direct. (HP Dkt. #7 at 10; I-6-7). Petitioner's decision not to ask further questions both after the sidebar and on re-cross was based not on a lack of opportunity, but a strategic choice to protect privileged information. Therefore, Petitioner cannot properly claim her confrontation rights were violated.

      3. <u>Terry Rooney</u>

Petitioner argues her confrontation rights were violated because Terry Rooney ("Ms. Rooney"), a senior member in Bank of America's wire transfer department, testified about an interstate phone call to approve a $50,000 wire transfer to Petitioner's business account.  (HP Dkt. #1 at 10).  Specifically, Petitioner argues that cross-examining Ms. Rooney was ineffective to ascertain the phone call's substance because she was not a party to the conversation.  *Id.*  The Government responds that cross-examining Ms. Rooney was sufficient because it never offered or admitted at trial any testimonial statements from the phone call.  (HP Dkt. #7 at 11).

Ms. Rooney testified that, according to Bank of America's business records, a telephone conversation took place between two Bank of America employees to approve a $50,000 wire transfer to Petitioner's account.  (HP Dkt. #7 at 11).  Business records are not testimonial statements within the context of the Confrontation Clause.  *See Crawford,* 541 U.S. at 55.  Accordingly, Petitioner's confrontation rights were not violated.

4. <u>Vivian Van Deusen</u>

Petitioner argues her confrontation rights were violated because the Government offered testimonial statements from Vulcan's employees concerning wire transfer approvals through the testimony of Vivian Van Deusen ("Ms. Van Deusen"), Vulcan's Director of Finance.  (HP Dkt. #1 at 12).  The Government responds that it never offered testimonial statements from Vulcan's employees through Ms. Van Deusen's testimony.  (HP Dkt. #7 at 12).

Of all the Vulcan employees Petitioner names in this allegation, only Paul Allen was mentioned during the Government's direct examination of Ms. Van Deusen – and his name was only mentioned in passing as Vulcan's owner.  (HP Dkt. #7 at 12).  In fact, as the

Government correctly points out, it was Petitioner's counsel that brought up the names of Vulcan employees Jody Patton, Paul Allen, and Bill Savoy on cross-examination.  (HP Dkt. #7 at 12, II-138).  Therefore, Petitioner's confrontation rights were not violated because the Government never offered testimonial statements from these Vulcan employees.

5. Computer Used By William Rupp

Petitioner argues that her confrontation rights were violated because she was unable to cross-examine the computer of Vulcan's computer expert William Rupp ("Mr. Rupp") or its manufacturer to determine whether it was modified prior to Mr. Rupp's in-court demonstration on e-mail alteration.  The Government responds that not only is it impossible to cross-examine a computer, but also that it is unnecessary to provide further witnesses to verify Mr. Rupp's testimony.

Petitioner alleges two points: 1) Mr. Rupp, a Vulcan employee, is a biased witness and 2) Mr. Rupp could have altered his computer prior to his in-court demonstration on how Petitioner altered e-mails to facilitate her fraud crimes.  (HP Dkt. #14 at 9).  However, the Government need not call witnesses, equally available to both sides, merely because cross-examination of such a witness might prove helpful to the defense case.  *U.S. v. Snow,* 521 F.2d 730, 736 (9th Cir. 1975).  If Petitioner still doubted Mr. Rupp's credibility after cross-examination, she could have called additional witnesses to testify about either Mr. Rupp's character or the ease of modifying computers for demonstrations.  Petitioner did neither. Accordingly, Petitioner's confrontation rights were not violated because she had the opportunity to cross-examine Mr. Rupp and inquire into the truthfulness of his testimony.

6. Theodore Miller

Petitioner argues her confrontation rights were violated because she was unable to cross-examine the federal agent who found two $350,000 wire transfer statements in her home. The Government responds that Petitioner's confrontation rights were not violated because Theodore Miller ("Mr. Miller"), the evidence custodian for the bank statements, was available for cross-examination.

If a custodian has a record in his legal custody and certified that it was in accurate compliance with Fed. R. Evid. 902(1), 902(2), or 902(3), then it was properly authenticated under 902(4). *U.S. v. Weiland,* 420 F.3d 1062, 1073 (9th Cir. 2005). No provision of the Federal Rules of Evidence requires that the custodian also be shown to have kept the records in his physical custody at all times, as long as the records were actually recorded or filed in public office. *Id.* And, at least with business records, it is not required that the witness have personally participated in the creation or maintenance of the document, nor even know who actually recorded the information. *See U.S. v. Basey,* 613 F.2d 198, 202 (9th Cir. 1979); *U.S. v. Muhammed,* 928 F.2d 1461, 1469 (7th Cir. 1991) (citations omitted).

The record shows that two bank statements were properly admitted into evidence based on Mr. Miller's testimony, the evidence custodian for the documents. While Mr. Miller testified that Stuart Filmore ("Special Agent. Filmore") was the actual FBI agent who located the two bank receipts at Petitioner's home, the Government never offered testimonial statements from Special Agent Filmore at trial. (III-495). Because Petitioner was able to cross-examine Mr. Miller as to where the bank receipts were found, Petitioner's confrontation rights were not violated Moreover, under <u>Snow,</u> Filmore did not have to be called to testify. U.S. v. Snow at 736.

B. <u>Ex Post Facto Clause</u>

Petitioner argues her sixty-three (63) month sentence is unlawful because it exceeds the five-year statutory maximum under 18 U.S.C. §1343 (2001).  The Government responds that Petitioner is procedurally barred from challenging her sentence because she never raised this claim either at trial or on direct appeal.  The Government also argues that, even if Petitioner is not procedurally barred from challenging her sentence length, it was appropriate considering she was convicted of eight (8) counts of wire fraud.

Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.  *Massaro v. United States,* 538 U.S. 500, 504 (2003) (citations omitted).  And, when convicted on multiple counts of a crime, it is permissible for a sentence to exceed the statutory maximum for a single count.  *See United States v. Joetski,* 952 F.2d 1090, 1098 (9th Cir. 1991).  However, a specific and express order is required when a Sentencing Guidelines sentence exceeds the statutory maximum for a single count.  *See id;* 18 U.S.C. § 3584(a).

Here, Petitioner is procedurally barred from challenging her sentence because the § 2255 Motion is the first time she has challenged the legality of her sentence.  (HP Dkt. #7 at 14).  Petitioner is unable to show prejudice because her sixty-three (63) month sentence was well within the appropriate range for being convicted of eight (8) counts of wire fraud.  Petitioner would only have cause if, for example, after being convicted on only one count of wire fraud, she were sentenced to sixty-three (63) months in prison.

As the Government correctly points out, however, the judgment form is flawed because the trial court never indicated that the sentence, or at least one or more counts of Petitioner's sentences, should run consecutive to the sentence on the other counts.  (HP Dkt. #7 at 14-15).  Requiring the court to expressly order consecutive sentences is more than a

mere formalism, as it is possible that one or more of the counts might be reversed on appeal. *See Joetski,* 952 F.2d at 1098. Therefore, while it is permissible for Petitioner's sentence to exceed the statutory maximum for a single count, the court must order Petitioner's sentences to run consecutively. In light of 18 U.S.C. § 3584's demands, resentencing is required.[3]

C.  Ineffective Assistance of Counsel

Petitioner argues that there were numerous instances where her counsel was ineffective. Each instance will be considered in turn.

A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were outside the wide range of professionally competent assistance, and (2) that the defendant was prejudiced by reason of counsel's actions. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). However, to establish such a claim, a petitioner must overcome the "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689 (citations omitted). To show prejudice, a defendant must show a reasonable probability that the result would have been different but for the counsel's errors. *Id.* at 694; *United States v. Cochrane,* 985 F.2d 1027, 1030 (9th Cir. 1993). The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland,* 466 U.S. at 697. Furthermore, if both components are considered, there is no prescribed order in which to address them. *Id.*

1.  Confrontation Clause

Petitioner argues her appellate counsel was ineffective because he failed to supplement her appeal, file a petition for rehearing, or pursue a petition raising confrontation claims after

---

[3] 28 USC § 3584(a) provides, in relevant part, "Imposition of Concurrent or Consecutive Terms. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."

REPORT AND RECOMMENDATION – 10

the decision in *Crawford v. Washington,* 541 U.S. 36 (2004). (HP Dkt. #1 at 16). The Government responds that any deficiency in Petitioner's appellate counsel is irrelevant because none of Petitioner's confrontation claims have any merit. (HP Dkt. #7 at 16).

Petitioner's counsel's failure to supplement her appeal does not rise to the level of ineffective assistance of counsel because Petitioner was not prejudiced by her counsel's actions. Even if Petitioner's counsel was deficient, considering the Court's analysis of Petitioner's Confrontation Clause claims in Section A of this discussion, Petitioner was not prejudiced by her appellate counsel's failure to supplement her appeal because her confrontation claims are without merit. The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel. *Shah v. United States,* 878 F.2d 1156, 1162 (9th Cir. 1989).

2. Ex Post Facto Claim

Petitioner argues that both her trial and appellate counsels were ineffective because they failed to contest that her sentence exceeded the statutory maximum under 18 U.S.C. § 1343 by three (3) months. (HP Dkt. #1 at 17). The Government responds that, because Petitioner was convicted on eight (8) counts of wire fraud, a sixty-three (63) month sentence was permissible. (HP Dkt. #7 at 16). The only error, which the Government concedes, was that the trial court should have ordered Petitioner's sentences to run consecutively. *Id.*

As stated in Section B of this analysis, Petitioner's sentence was both lawful and appropriate considering she was convicted on eight (8) counts of wire fraud. Therefore, her counsel's failure to challenge the sixty-three (63) month sentence was not outside the wide range of professionally competent assistance because any challenge to Petitioner's sentence

length would be unsuccessful.  Accordingly, this claim of ineffective assistance of counsel must fail.

### 3. Trial Counsel's Discovery Efforts

Petitioner argues her trial counsel was ineffective because he failed to seek any pre-trial discovery.  (HP Dkt. #1 at 17).  The Government responds that Petitioner is incorrect because her counsel sought discovery at the arraignment hearing.  (HP Dkt. #7 at 16).

Numerous facts in the record indicate that Petitioner's counsel conducted a proper discovery: 1) Petitioner's counsel requested discovery pursuant to CrR 16 at the November 27, 2003 arraignment (Exhibit G); 2) Petitioner's counsel participated in a discovery conference held on December 2, 2003 (Declaration of Susan Loitz Regarding Petitioner's Motion Under 28 U.S.C. § 2255 – Exhibit A); 3) the Government sent several discovery items to Petitioner's counsel on, among other dates, December 6, 2003 and April 30, 2003  *Id.*; and 4) Petitioner's counsel attended a second discovery conference on April 18, 2003.  *Id.*  Based upon the meetings and frequent exchange of documents between the two parties, it cannot be said that Petitioner's counsel failed to properly conduct discovery.  Accordingly, this claim of ineffective assistance of counsel must fail.

### 4. Failure to Secure an Expert

Petitioner argues her trial counsel was ineffective because he failed to secure an expert to verify the validity of documents the Government obtained from Vulcan.  (HP Dkt. #1 at 18).  The Government responds that there is no evidence that anyone conspired against her to fabricate evidence.  (HP Dkt. #7 at 17).

Ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.  *U.S. v. Eggleston,* 798 F.2d 374, 376 (9th Cir.

1986).  In addition, a petitioner's generalized claim that further investigation should have been done is insufficient unless the petitioner can show "a reasonable probability that…the result of the proceeding would have been different."  *U.S. v. Schaflander,* 743 F.2d 714, 718 (9th Cir. 1984)

As the Ninth Circuit aptly stated, the evidence of Petitioner's guilt was "overwhelming."  *See United States v. Hicks,* 103 Fed. Appx. 208 (9th Cir. 2004).  Moreover, the Government's Brief points out several facts established at trial that challenge Petitioner's defense that she rightly earned the $1.9 million dollars doing after hours consulting work for Vulcan: 1) the testimony of Vulcan's vice-president that he did not hire Petitioner as a consultant; 2) the implausibility that she was paid $1.9 million for after hour consulting over the course of eight months; 3) the absence of any tangible evidence to corroborate that Petitioner did consulting work; and 4) Petitioner's failure to report any income for her supposed consulting work.  (HP Dkt. #7 at 16-17).  In fact, at Petitioner's sentencing hearing, even Judge Coughenour stated: "[T]his trial ranks in the top five of my 22 years of experience of a defendant who was testifying to facts that were just blatantly untrue.  Particularly with regard to…her repeated testimony that she had a consultant contract with Vulcan…and that she submitted invoices for that consultant work…none of which was corroborated and all of which flew in the face of reality during the course of the trial."  (HP Dkt. #7 at 2 – Ex. A).  Accordingly, Petitioner's counsels' failure to secure an expert does not rise to the level of ineffective assistance of counsel because Petitioner cannot show that the result of the proceeding would have been different.

5. <u>Waiver of Speedy Trial</u>

Petitioner argues her trial counsel was ineffective because he waived her right to a speedy trial without just reason. (HP Dkt. #1 at 18). The Government responds that Petitioner knowingly waived her right when she agreed to a continuance.

Petitioner's argument that her counsel waived her rights without any "justifiable reason" is not well received. (HP Dkt. #1 at 19). On May 21, 2003, Petitioner's counsel filed a Motion to Continue Trial Date stating, inter alia, that a trial continuance was necessary in order to "permit adequate representation of the defendant and to preserve continuity of counsel on her behalf." (Cr Dkt. #21 at 5 – Defendant Hicks' Motion to Continue Trial Date). Two days later, Petitioner, voluntarily and with the advice of counsel, knowingly waived her right to a speedy trial. (Cr Dkt. #29 at 1-2 – Defendant Hicks' Speedy Trial Waiver). Accordingly, Petitioner cannot claim ineffective assistance of counsel when her attorney had a legitimate reason for continuing her trial and she knowingly agreed.

6. <u>Motion to Suppress Evidence</u>

Petitioner argues her trial counsel was ineffective because he failed to properly litigate and suppress evidence seized and statements made during the prolonged search of her home on July 11, 2002. (HP Dkt. #1 at 19). The Government responds that Petitioner misrepresents both her cited legal authority and the facts surrounding the July 11 search. (HP Dkt. #7 at 20). Specifically, the Government contends that their search was not excessively long in duration and Petitioner's statement made to officers were voluntary and elicited during a non-custodial interview. *Id.*

Petitioner's counsel's failure to "properly litigate [Petitioner's] Fourth Amendment issue" does not rise to the level of ineffective assistance of counsel because not only did her counsel challenged the FBI's search at an evidentiary hearing, but also Petitioner's legal

argument misstates the law.  (HP Dkt. #1 at 21).  Her arguments are largely drawn from several previously filed motions to suppress evidence.  (*See* Cr Dkt. #24 – Motion to Suppress Post-Arrest Statements; Cr Dkt. #25 – Motion to Suppress Evidence Seized from Search of Car; Cr Dkt. #26 – Motion to Suppress Evidence Seized from Illegal Search).  In an Order after the July 7, 2003 evidentiary hearing on these Motions, Judge Coughenour found Petitioner not credible, and that her statement to police during the search was voluntary and elicited during a non-custodial interview.  (HP Dkt. #7 at 19).

Petitioner again challenges the legality of the search based upon two recent Supreme Court cases, arguing that the search extended an hour "beyond the time necessary…due to [an] interrogation of [Petitioner]."  (HP Dkt. #1 at 21; *See Illinois v. Cabellas,* 543 U.S. 405 (2005); *Muehler v. Mena,* 544 U.S. 93 (2005)).  As the Government correctly states, these cases are distinguishable because, in *Muehler,* the Supreme Court specifically declined to address whether defendant's detention was unnecessarily long.  544 U.S. at 102. Additionally, here, Mr. Miller, the agent interviewing Petitioner, states that "[w]hile this interview [of Petitioner] was taking place, multiple other agents searched the premises for the items set forth in the search warrant.  Thus, the interview…did not create any meaningful delay in completion of the search."  (HP Dkt. #7 – Attached Declaration of Special Agent Theodore Miller Regarding Petitioner's Motion Under 28 U.S.C. § 2255).  Given Mr. Miller's testimony and declaration, Petitioner's lack of credibility, and that the cited case law is distinguishable, Petitioner cannot claim her counsel's efforts to defend her Fourth Amendment rights were outside the wide range of professionally competent assistance.  *See Strickland,* 466 U.S. at 688.  Accordingly, this claim of ineffective assistance of counsel must fail.

7. <u>Witness Notes</u>

Petitioner argues her trial counsel was ineffective because he failed to acquire the trial notes from Government witness Margaret McGuire ("Ms. McGuire"). The Government responds that not only was it not required to turn over Ms. McGuire's notes, but also that the notes are brief and reveal little substantive information. (HP Dkt. #7 at 20-21).

Under 18 U.S.C. 3500(a), while the Government is required to produce witness statements, notes by or relating to a witness are not statements. *See United States v. Donaghe*, 924 F.2d 940, 944 (9th Cir. 1991). Here, Ms. McGuire's notes are a series of bullet points relating to a discussion with Petitioner on February 6, 2002. (HP Dkt. #7 – Declaration of Richard Cohen Regarding Petitioner's Motion Under 28 U.S.C. § 2255 – Exhibit A). Because these notes are insignificant, trial counsel's failure to pursue their production did not deprive Petitioner of a fair trial. Moreover, while it is unconfirmed, it appears the Government previously sent Ms. McGuire's notes to Petitioner's counsel. (*See* HP Dkt. #7 – Declaration of Richard Cohen at 2). Accordingly, this claim of ineffective assistance of counsel must fail.

8. <u>Petitioner's Affidavit to FBI</u>

Petitioner argues her trial counsel was ineffective because he failed to object when her affidavit submitted to the FBI was admitted at trial. (HP Dkt. #1 at 24). The Government responds that because Petitioner voluntarily provided the affidavit to the FBI, trial counsel had no basis to object when her statement was admitted. (HP Dkt. #7 at 21).

In her motion, Petitioner cites authority that a defendant's testimony in a suppression hearing is inadmissible against her at trial on the issue of guilt unless she makes no objection. (HP Dkt. #1 at 23-24). Therefore, Petitioner argues that her statements from the July 2, 2003 evidentiary hearing were improperly admitted at trial. This is incorrect, however, because the

Government only admitted the October 31, 2002 affidavit that Petitioner voluntarily provided to the FBI after learning she was being investigated for wire fraud.  (HP Dkt. #7 at 21). Petitioner cannot claim her counsel's failure to object was improper when he had no basis for his objection.  Accordingly, Petitioner's counsel's failure to object to the admission of her October 31, 2002 affidavit at trial did not rise to the level of ineffective assistance of counsel.

9. Objections During Direct

Petitioner argues her trial counsel was ineffective because he failed to object and preserve the appellate record regarding prosecutorial misconduct during Petitioner's cross-examination.  (HP Dkt. #1 at 24-25).  Specifically, she points to trial counsel's failure to object when the Government asked whether Petitioner thought two other witnesses provided false testimony.  *Id.*  The Government responds that Petitioner fails to demonstrate any prejudice due to trial counsel's failure to object.  (HP Dkt. #7 at 22).

Petitioner is correct that it is error to ask the defendant to call a prosecution witness a liar.  See *U.S. v. Sanchez,* 176 F.3d 1214, 1219-20 (9th Cir. 1999).  However, "[a] prosecutor's improper question is not in and of itself sufficient to warrant reversal.  It must also be determined whether the prosecutor's actions…would result in a miscarriage of justice." *U.S. v. Geston,* 299 F.3d 1130, 1136 (9th Cir. 2002).  Here, due to the overwhelming evidence of Petitioner's guilt, she cannot show how her counsel's failure to object resulted in a miscarriage of justice.  Accordingly, this claim of ineffective assistance of counsel must fail.

10. Rule 29 Motion

Petitioner argues her trial counsel was ineffective because he failed to file a motion for judgment of acquittal at the close of the Government's case.  (HP Dkt. #1 at 25).  The

Government responds that Petitioner fails to demonstrate any prejudice due to trial counsel's failure to file a Rule 29 motion.  (HP Dkt. #7 at 22).

According to Fed. R. Crim. P. 29(a), the court, on the defendant's motion, must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction.  Here, the evidence of Petitioner's guilt was not just sufficient, it was overwhelming.  *See U.S. v. Hicks,* 103 Fed. Appx. at 210.  In fact, during the sentencing hearing, Judge Coughenour stated that Petitioner's "conduct was about as outrageous as any embezzlement scheme I've seen in the last 22 years."  (HP Dkt. #7 – Exhibit A at 315-16).  Based upon the overwhelming evidence of Petitioner's guilt, her counsel's failure to file a Rule 29 motion does not rise to the level of ineffective assistance of counsel because such a motion would have been unsuccessful and a waste of the Court's resources.  Accordingly, this claim of ineffective assistance of counsel must fail.

11. Imposition of a General Sentence

Petitioner argues her trial counsel was ineffective because he failed to contest her general sentence of sixty-three (63) months.  (HP Dkt. #1 at 26-27).  The Government reiterates that it was permissible for Petitioner's sentence to exceed the statutory maximum for a single count because she was convicted of eight (8) counts of wire fraud.  (HP Dkt. #7 at 23).

As stated in Section B of this analysis, Petitioner's sentence length was appropriate. Therefore, Petitioner's counsel's failure to object to Petitioner's sentence length was neither outside the wide range of professionally competent assistance nor prejudicial to Petitioner. Even with the sentencing error, the length of her sentence remains the same.  Accordingly, this claim of ineffective assistance of counsel must fail.

1

2      12. *Blakely* Challenge

3          Petitioner argues her appellate counsel was ineffective because he failed to pursue a

4  petition for rehearing with the Ninth Circuit based upon the Supreme Court's ruling in *Blakely*

5  *v. Washington,* 542 U.S. 296 (2004).  (HP Dkt. #1 at 27-28). The Government responds that

6  not only is the cited case law inapplicable, but if her case were remanded for sentencing, she

7  would likely receive a longer sentence now that the Sentencing Guidelines are only advisory.

8  (HP Dkt. #7 at 23).

9          As of January 12, 2005, courts are no longer obligated to follow the Federal

10  Sentencing Guidelines.  *See United States v. Booker,* 543 U.S. 220, 245 (2005).  However,

11  this rule does not apply retroactively to convictions that became final before the publication of

12  *Booker.  United States v. Cruz,* 423 F.3d 1119, 1120 (9th Cir. 2005).

13          As an initial matter, Petitioner's reliance upon *Blakely* is misplaced.  *Blakely* involved

14  Sixth Amendment issues surrounding state sentencing guidelines; *Booker* involved Sixth

15  Amendment issues surrounding federal sentencing guidelines.  *See Blakely,* 542 U.S. at 296;

16  *Booker,* 543 U.S. at 245.  Accordingly, while *Booker* is the relevant case law, it is

17  inapplicable in the present matter because Petitioner's conviction became final six months

18  prior to *Booker's* publication.  *See Hicks,* 103 Fed. Appx. 208; *Booker,* 543 U.S. at 245.

19  Petitioner's counsel's failure to object benefited Petitioner and, therefore, did not fall outside

20  the wide range of professionally competent assistance. *See Strickland,* 466 U.S. at 688.

21  Accordingly, this claim of ineffective assistance of counsel must fail.

22      13. Abuse of Trust Enhancement

23          Petitioner argues that both her trial and appellate counsels were ineffective because

24  they failed to challenge the "abuse of trust" enhancement imposed at the sentencing hearing.

25

26

27

(HP Dkt. #1 at 28).  The Government responds that the abuse of trust enhancement was appropriate considering Petitioner used knowledge and skills as an accountant to facilitate and conceal her crime.  (HP Dkt. #7 at 24).

During Petitioner's sentencing, Sentencing Guidelines Section 3B1.3 was applied, which states that a sentence enhancement is required when a special skill is used "in a manner that significantly facilitated the commission or concealment of the offense."  18 U.S.C. Appx. § 3B1.3.  The evidence at trial supports that Petitioner used her accounting expertise to disguise the $1,981,000 actually paid to Petitioner's company to make it appear as though these sums had been paid to legitimate vendors.  Thus, the evidence demonstrates that Petitioner used her special skills as an accountant to conceal her embezzlement.  Therefore, Petitioner's counsels' failure to object to the abuse of trust sentence enhancement did not fall outside the wide range of professionally competent assistance because the enhancement was supported by Section 3B1.3's guidelines.  *See Strickland,* 466 U.S. at 688.  Accordingly, this claim of ineffective assistance of counsel must fail.

14. <u>Restitution Order</u>

Petitioner argues that both her trial and appellate counsels were ineffective because they failed to challenge the restitution order which, she contends, fails to account for her financial resources and projected earnings upon release from prison.  (HP Dkt. #1 at 29).  The Government responds that the court properly decided both the amount and manner in which the restitution was to be paid.

In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.  18 U.S.C. § 3664(f)(1)(A).  Here, the court

ordered restitution in the amount of $1,981,000 – the amount Petitioner embezzled from Vulcan. (Cr Dkt. #79 at 5 – Judgment in a Criminal Case). Because the court sets this amount without consideration of the economic circumstances of Petitioner, it is hardly unreasonable. *See* 18 U.S.C. § 3664(f)(1)(A). Thus, Petitioner's argument that the court's ordered amount and method of repayment failed to comply with applicable statutes is not well received.

Also, according to 18 U.S.C. § 3664 (f)(2), only when determining the manner and schedule in which the restitution is to be paid are the financial resources and projected earnings of the defendant taken into account. The court did take these factors into consideration when it ordered that Petitioner is required to make monthly installments not less than 10% of the defendant's gross monthly household income, to commence 30 days after release from imprisonment. (Cr Dkt. #79 at 6). Just because Petitioner is "most likely not to be employed as an accountant following…[her] release from imprisonment" does not mean she is incapable of attaining gainful employment that will enable her to meet her restitution obligations. (HP Dkt. #1 at 29). Thus, Petitioner's counsels' failure to object to the restitution order did not fall outside the wide range of professionally competent assistance because the order was properly issued. *See Strickland,* 466 U.S. at 688. Accordingly, this claim of ineffective assistance of counsel must fail.

15. Forfeiture Order

Petitioner argues that both her trial and appellate counsels were ineffective because they failed to object to an improperly issued forfeiture of her interest in property. (HP Dkt. #1 at 30). Government responds that not only are Petitioner's claims unfounded, but also that

she already raised and lost the forfeiture issue in an earlier Motion for Return of Property. (HP Dkt. #7 at 25).

Federal Rule of Criminal Procedure 32.2(b)(3) provides that a preliminary order of forfeiture becomes final as to the defendant on the date of sentencing. *See* Fed. R. Crim. P. 32.2(b)(3); *see also United States v. Christunas,* 126 F.3d 765, 768 (6th Cir. 1997). Here, Petitioner's counsels' failure to object to Petitioner's forfeiture of her interest in property does not rise to the level of ineffective assistance of counsel because she already raised and lost these exact issues in an earlier Motion for Return of Property filed on September 22, 2005. (Cr Dkt. #134 – Motion for Return of Property). After determining that both the preliminary order of forfeiture and final order of forfeiture were timely entered on October 17, 2003, Judge Coughenour denied Petitioner's Motion on October 14, 2005. (Cr Dkt. # 137 – Order Denying Motion for Return of Property). Petitioner's counsels' failure to object to the forfeiture order after Judge Coughenour explicitly rejected this argument was appropriate and not at all outside the wide range of professionally competent assistance. *See Strickland,* 466 U.S. at 688. Accordingly, this claim of ineffective assistance of counsel must fail.

D. <u>Cumulative Error</u>

Petitioner argues that, due to the aforementioned errors at both trial and appellate levels, cumulative error denied Petitioner a fair trial. (HP Dkt. #1 at 32). The Government responds that Petitioner has established no error justifying vacating or setting aside her sentence. Based upon the Court's analysis in the preceding sections, Petitioner has not established cumulative error that justifies vacating or setting aside her sentence. However, the trial court's failure to establish whether the sentence for each count run consecutively or concurrently does justify vacating this sentence and remanding it for resentensing.

## IV. CONCLUSION AND ORDER

Accordingly, the Court recommends that Petitioner's § 2255 motion be GRANTED and her sentence VACATED for the required resentencing pursuant to 18 U.S.C. § 3584.  A proposed Order accompanies this Report and Recommendation.

DATED this 3rd day of August 2006.


MONICA J. BENTON
United States Magistrate Judge